No. 28,274.

THE CITY OF WINFIELD, *Appellee,* v. EARL F. WAKEFIELD, Doing Business as the WAKEFIELD DRILLING COMPANY, *Appellant.*

(271 Pac. 392.)

Opinion filed November 3, 1928.

*J. B. McKay,* of El Dorado, for the appellant.

*S. C. Bloss, George T. McNeish* and *Stewart S. Bloss,* all of Winfield, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: The city of Winfield, which owns and operates a natural gas system to supply gas to its citizens and customers, brought an action against Earl F. Wakefield to recover for gas purchased by and furnished to him in the month of February, March and April, 1927, at prices which had been prescribed in a city ordinance. Because of defaults in the payments for the gas furnished, certain penalties were assessed in accordance with the provisions of the ordinance. Plaintiff alleged that the prices of the gas furnished with penalties charged amounted in all to $845.04,

for which judgment was asked. The case was tried largely on statements and admissions of the parties, and there is no substantial dispute as to the material facts. The court found and adjudged that plaintiff was entitled to recover $800.05 and gave judgment accordingly, from which defendant appeals.

Defendant admitted that he applied for and obtained gas from the plaintiff, as alleged in the petition, at the price charged other customers within the city and as prescribed in an ordinance of the city, but he undertakes to defend on the ground that he was practically coerced into applying for and using gas furnished by the city, and that under the circumstances of the case the plaintiff is not justly entitled to recover the amount awarded. His claim was that he procured an oil and gas lease upon a tract of ground within the city of Winfield and made preparations to drill a well thereon. To drill it was necessary that he should obtain gas for fuel. He applied to the Empire Natural Gas Company, which had a pipe line near the outskirts of the city, and contracted with that company for gas at eight cents per thousand cubic feet. To obtain gas from that company it was necessary to lay a pipe line from the leased tract to the line of the Empire company, a distance of about one-half a mile across and along certain streets of the city. He applied to the city for permission to lay such a pipe line, but permission was refused, as the city did not think it prudent to allow the Empire company to sell oil and gas within thei city. He alleges that he could have purchased gas from the Empire company for eight cents per thousand cubic feet, and that the city rate for gas furnished to customers in the city was about twenty cents per thousand cubic feet. In order that he might develop the leased tract he was compelled to purchase gas from the city and did so, protesting the action of the city in denying him the privilege of laying the pipe line. For the gas furnished under the purchase for the first month he paid the price charged, but at the end of the following month and when the drilling had been completed, he declined to pay the city rate and tendered payment of an amount which would have been due if the gas had been sold at the eight-cent rate charged by the Empire company. The tender was refused. The well drilled by defendant in the city proved to be a producer, and it appears that the city then allowed him to install a pipe line through which the gas was transmitted for sale to the Empire line.

Defendant's liability was established when he admitted that he purchased and obtained gas from the city at the uniform price at which it was furnished to other customers within the city, and had failed to pay for it. He had made a binding contract for the gas, and did not claim that any payment had been made other than was alleged by plaintiff, and had not pleaded any set-off as against the claim of plaintiff.

The fact that he could have purchased gas at some point outside of the city at a lower price was not a defense to a claim for an article which he actually bought at a stated price, knowing it to be the price charged all customers within the city. There was no discrimination against him, as the fuel was sold to him at a price established by an ordinance which placed him on an equality with all citizens and consumers. His protest made at the time of the purchase was immaterial, and there was no coercion, as he was at liberty to purchase or decline to purchase the gas at the standard price, and he was at liberty also to use other fuel in his drilling operation. His request for the right to lay a pipe line through the streets and alleys of the city to obtain fuel from an outside pipe-line company for drilling purposes within the city, and the granting of such a right was a matter within the discretion and control of the governing body of the city. That body, which has supervisory control of streets and alleys, may have concluded that the welfare of the city would not be promoted by allowing its streets to be torn up and pipes laid in them to enable an outside company to furnish gas to a single consumer in the city. Whatever the purpose of the city commission may have been, the refusal of the privilege asked for could not relieve the defendant from the obligation to pay for the gas purchased and used by him after the privilege requested had been denied. The use or misuse of municipal power could not be raised and determined in the present action brought, as we have seen, to recover the price of a commodity acknowledged to have been purchased and used.

The judgment is affirmed.